[No. 1150.  Decided July 18, 1894.]

ANGUS McKENZIE *et al.*, *Appellants*, v. W. A. WOODIN (impleaded), *Respondent*.

TIDE LANDS — RIGHT OF PURCHASE — WHEN LIMITATION BEGINS TO RUN — IMPROVEMENTS BY LESSEE.

Under §2172, Gen. Stat., giving shore owners and improvers the preference right to purchase appraised tide lands for sixty days following the "filing of the final appraisal" thereof, the sixty days begins to run from the date the plat and record thereof by the local board of tide land appraisers is formally received by the state board of equalization, and directed by that body to be placed on file.

Although certain tide lands may be necessary for lumber yard and log booming purposes in connection with a saw mill business conducted on contiguous tide land, yet the use of such tide lands by a lessee of the saw mill will not constitute him an improver within the contemplation of the act of March 26, 1890 (Gen. Stat., §2172).

*Appeal from Superior Court, Whatcom County.*

*Newman & Howard*, for appellants.

*I. N. Maxwell*, for respondent.

The opinion of the court was delivered by

STILES, J.—This was a contest between an alleged improver of tide lands and one claiming the right to purchase tide lands lying in front of upland owned by him.

Gen. Stat., § 2168, requires the local board of tide land appraisers to deposit one copy of their plat and record

with the county auditor, and deliver one copy of the same to the state board of equalization. The auditor is required to file the documents deposited with him; but nothing is said as to what shall be done with those delivered to the state board. Gen. Stat., § 2172, gives to shore owners and improvers the preference right to purchase appraised tide lands for sixty days following the *"filing of the final appraisal"* thereof. Out of the uncertain meaning attaching to the words "filing of the final appraisal" has grown the first wrong of which appellants complain, the court trying the contest having held that the period of sixty days mentioned commences to run from the date of the deposit with the auditor, and not from that of the delivery to the state board. The whole question depends upon what is intended, by the law, to be the duty of the state board in connection with these plats and appraisements. Respondent's contention is that, inasmuch as the board is not required to *file* them, the time at which it might assume to file would have no effect whatever on the matter of applications to purchase. But it seems to us that the reason of this contention is not with the respondent. The work of the local board of appraisers is subject to review on appeal to the state board by the prosecuting attorney of the county, and the period of sixty days within which he must appeal is fixed by Gen. Stat., § 2169, as the sixty days after the appraisement complained of has been *"filed"* with the state board. But without this, every consideration of the orderly administration of business demands that all documents of a public character upon which the rights of individuals may rest should be treated with this formality. The state board could only act officially as an organized body, although the statute is silent as to the method of organization. It did organize and it appointed a clerk; but even if the clerk could be authorized to receive these papers as delivered to the board, it nowhere appears that any such

authority was given him. On the contrary, the minutes of the board show that, in this particular case at least, the board did not treat the appraisement as delivered to it until, at a regular session, it formally received it and directed it to be placed on file.

The facts were, as the court found, that the report of the appraisers was deposited with the county auditor and filed by him December 7, 1891, On December 10 a member of the local board gave the duplicate of the report to the secretary of state (a member of the state board); but there was no meeting of the board until January 7, 1892, and it was not until then that it in any wise recognized the existence of the report, and ordered it placed on file. In the mean time, and because of the absence of this appraisement from the records of the state board, the commissioner of public lands refused to accept any applications for purchase of tide lands covered by it. Appellants filed their application March 3, 1892, which was within the time prescribed by the statute. The ''filing of the final appraisal'' or the final filing of the appraisal, as the legislature most likely meant, was the date of the authorized filing by the state board, and not the other. Any other construction would make the law a trap, and cause unending confusion in the state land offices.

Upon the merits of this case we shall pass on one point, and that involves the single question whether the respondent was an improver of tide lands, who, under the statute, is given a preference right to purchase. The right of improvers, it is to be remembered, depends upon improvements made prior to March 26, 1890.

The Fairhaven Land Company, by its lease, dated February 25, 1890, but acknowledged March 6, let to one Frankenburger a tract of tide land known as block 10, in the town plat of Fairhaven, together with three other small parcels of tide land which it assumed to own, all of

which lay to the south of Gambier street, as it has been extended across the tide lands. At the time of the lease there was upon block 10 a saw mill the machinery of which belonged to Frankenburger, and the lease provided for the removal of the machinery at the expiration of the term. Paragraph 4 of the lease read as follows:

"During the term of this lease and thereafter, the said I. Frankenburger hereby agrees to respect the rights and claims of the Fairhaven Land Company to the title to the said land and its rights and claims therein as the owner of the shore in front of which the said lands are situated, and agrees to assert no claim of right in or to the said lands or any part thereof not granted by the terms of this contract. And should any right inure to the said I. Frankenburger under any laws now in force, or hereafter to be enacted by reason of his having improvements upon the said lands, then the said improvements for the purpose of acquiring title shall be deemed to inure to the benefit of the Fairhaven Land Company, and shall, if necessary, be conveyed by the said Frankenburger to the said Fairhaven Land Company."

On March 24, 1890, Frankenburger sold to respondent and others all the machinery in the saw mill, including everything connected with and used in working and running the same, by a bill of sale of personal property; and on the next day he executed to them an assignment of his lease, which was assented to by the Fairhaven Land Company, the assignee of the lease expressly covenanting to assume and carry into effect all of the terms and conditions of the lease. The tide lands applied for are entirely outside of the descriptions in the lease, being certain lots of open water lying to the north of Gambier street, which respondent claims are necessary for his convenient use of the saw mill as a place to secure logs in while awaiting the process of sawing up, and certain other lots which had been filled up with debris and are used as a lumber yard. These lumber yard lots had been filled up and were used by

Frankenburger, under an oral license from appellant Mc-
Kenzie, who claimed them under a deed from the Fairhaven
Land Company.    There was no attempt on the part of
Frankenburger to convey to respondent and his associates
any right or title to any of the contested ground.    Respond-
ent's entire claim is based on the theory that this ground
is necessary to the enjoyment of his lease from the Fair-
haven Land Company, and the evidence makes out a fairly
reasonable showing in support of the alleged necessity.    The
difficulty is, however, that respondent does not show that
on the 26th of March, 1890, he was the owner of any im-
provements on these lands, or on any lands in that vicinity.
He was the owner of the machinery in the mill, but that
was personal property, not a part of the realty by the terms
of the agreement with the land company, and not an im-
provement within the obvious meaning of the statute.    He
was the lessee of certain tide lands, but the statute does
not prefer lessees, the contract precluded any application
on his part for the purchase of the leased ground, and he is
not applying for that ground.    If the theory of necessity
were to have a deciding weight it would not have any
reasonable effect in favor of respondent, because the proof
tends to show that the disputed lands are necessary to the
enjoyment of block 10, as realty, which respondent does
not own.    It may be that the tide land act would support
an application of a saw mill owner for reasonable ground
for lumber yard and log booming purposes, but it would
certainly not sustain a lessee in making the application,
since the moment the lease should terminate the mill ground
and the yard and boom grounds would be separated, and
the beneficial use of the area conceded by the state to the
mill would be lost, and the purpose of the grant defeated.
This result is illustrated in this case by the assignment of
the lease made by respondent, which is in the record and
from which it appears that at the time of the hearing he

had already severed the lands applied for from the mill property, and made its future use in connection with the mill impossible, without his consent, in case the title should be granted to him.

We are of the opinion that the respondent's application to purchase should have been refused, and that appellants' application should stand as uncontested, leaving it to the commissioner to determine their rights under the law. The judgment is reversed, and the cause remanded for a new judgment and certification in accordance with the statute. Appellants will not be allowed for forty pages excessive brief.

DUNBAR, C. J., and SCOTT, ANDERS and HOYT, JJ., concur.